IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AVAGO TECHNOLOGIES U.S., INC, ET AL. | : | |
| | : | MISCELLANEOUS ACTION |
| v. | : | |
| | : | NO. 15-199 |
| IPTRONICS INC, ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**                                    **SEPTEMBER  15 , 2015**

Presently before the Court is the Plaintiffs' Motion to Compel Tyco Electronics Corporation to Comply with Third Party Subpoena.  (ECF No. 1.)  For the following reasons, Plaintiffs' Motion will be denied.

## I.    BACKGROUND

This discovery dispute arises out of patent litigation currently pending in the United States District Court for the Northern District of California.  For purposes of that underlying litigation, Plaintiffs served three subpoenas *duces tecum* on non-party Tyco Electronics Corporation ("Tyco").  Plaintiffs contend that Tyco failed to comply with two of the three subpoenas.  Contending that this District is where compliance is required, Plaintiffs seek an order from this Court compelling Tyco's compliance with the subpoenas.

### A.    Factual Background

Plaintiffs allege that Defendants infringed two of its patents:  United States Patent No. 5,359,447 ("the '447 patent") and United States Patent No. 6,947,456 ("the '456 patent").  *See Avago Tech. U.S., Inc. v. IPtronics, Inc.*, No. 10-2863, 2013 WL 623042, at *1 (N.D. Cal. Feb. 15, 2013).  These patents relate to component parts, or VCSEL drivers, of a fiber optic communications device.  (Pls.' Mot. to Compel 1-2, ECF No. 1.)  Defendants are manufacturers

of those drivers, and sell the drivers to customers such as Tyco, who in turn use Defendants'

drivers to manufacturer a complete fiber optic communications device.  (*Id*. at 2.)  Seeking

redress for the alleged infringement, Plaintiffs filed suit against Defendants in the Northern

District of California on July 29, 2010.

Relevant here, Plaintiffs served three subpoenas *duces tecum* on Tyco, in connection with

the underlying litigation:  one on June 27, 2012 (the "First Subpoena"); one on October 11, 2012

(the "Second Subpoena"); and one on April 28, 2015 (the "Third Subpoena").  (Pls.' Mot. 2-3;

Tyco's Resp. 2-3, ECF No. 11.)  Plaintiffs also obtained additional documents from Tyco, via a

subpoena issued in connection with an investigation before the International Trade Commission

(the "ITC Subpoena").  (Pls.' Mot. 2.)  With regard to the Second Subpoena and the ITC

Subpoena, Tyco provided responsive documents to Plaintiffs' satisfaction.  (*Id*.)  With regard to

the First Subpoena, Tyco served responses beginning on June 27, 2012, and on a rolling basis

through January 28, 2013.  (*Id*.)  Tyco also provided responsive documents to the First and Third

Subpoenas on May 15, 2015 and August 17, 2015.  (Tyco's Resp. 3-4.)

The First and Third Subpoenas required documents to be produced in Media,

Pennsylvania.  (Pls.' Mot. 1.)  Plaintiffs issued the First Subpoena from this Court, and the Third

Subpoena from the Northern District of California.  (*Id*.)[1]

### B.      Procedural Background

Plaintiffs filed the instant Motion on July 27, 2015.  The Motion was filed in this Court

under Federal Rule of Civil Procedure 45, because this is the District where compliance with the

First and Third Subpoena is required.  After receiving an extension of time in which to respond,

---

[1] The First Subpoena was issued from this Court pursuant to the version of Federal Rule of Civil Procedure 45 applicable at that time.  Rule 45 was amended in 2013 to permit the District Court where the litigation is pending (the Northern District of California) to issue the Third Subpoena.

Tyco filed an opposition Response on August 20, 2015.  (Tyco Resp., ECF No. 11.)  Based upon

Tyco's Response, and certain representations made therein, we requested Plaintiffs to respond in

writing as to six specific areas of inquiry concerning their Motion.  (Aug. 21, 2015 Ltr. to Pls.

(on file with Court).)  Plaintiffs provided a response on August 26, 2015.  (Aug. 26, 2015 Ltr.

from Pls. (on file with Court).)  In addition to providing substantive responses to our inquiries,

Plaintiffs represented that they were withdrawing certain of the outstanding discovery Requests.

## II.     LEGAL STANDARD

In this Circuit, "[i]t is well recognized that the federal rules allow broad and liberal

discovery."  *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999) (citation omitted).

Nevertheless, "this right is not unlimited and may be circumscribed."  *Bayer AG v. Betachem,*

*Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  With regard to a subpoena issued to a third party, the

third party may seek protection from the subpoena under the provisions of Rules 26 and 45.  *In*

*re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-620, 2012 WL 298480, at *3 (E.D. Pa.

Jan. 31, 2012) (citation omitted).  Relevance, need, confidentiality, and harm are factors to

consider in analyzing the subpoena and requested documents.  *Id.*  "The determination of

relevance is within the district court's discretion."  *Gardella v. Prodex Int'l, Inc.*, No. 06-1821,

2007 WL 710289, at *3 (E.D. Pa. Mar. 5, 2007) (citation omitted).  "[E]ven if the information

sought is relevant, discovery is not allowed where no need is shown, or where compliance is

unduly burdensome, or where the potential harm caused by production outweighs the benefit."

*In re Mushroom Direct Purchaser*, 2012 WL 298480, at *3 (citation omitted).

Rule 45, which controls subpoenas issued to non-parties, was amended in 2013.  The

amended Rule provides:

(A)     When Required.   On timely motion, the court for the district where
compliance is required must quash or modify a subpoena that:

3

(i)      fails to allow a reasonable time to comply;

(ii)     requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii)    requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv)     subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). The "undue burden" category "encompasses situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money." *Cook v. Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012) (per curiam). The court "must limit the . . . extent of discovery" where it is duplicative, where it can be obtained from another source that is "more convenient, less burdensome, or less expensive," where the party seeking discovery has had ample opportunity to obtain the discovery, or where the burden or expense outweighs any perceived benefit of the discovery. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). This is particularly so in a situation involving discovery sought from a non-party. Broader restrictions may be necessary to prevent a non-party from suffering harassment or inconvenience. *Frank v. Honeywell Int'l Inc.*, No. 15-172, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015) (collecting cases).

In a patent case such as this, "[a] determination of relevance implicates substantive patent law. Therefore, [courts] look to Federal Circuit law rather than regional circuit law in discussing relevance." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 n.8 (Fed. Cir. 1990). In addition to analyzing relevance, the court must also balance "the requesting party's need, and the potential hardship to the party subject to the subpoena." *Truswal Sys. Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987). "In assessing the burden of complying with [the] subpoena, a court may consider as one factor that a deponent is not a

party." *Id.* In patent litigation, as with civil litigation in general, discovery, although relevant,

"is not permitted where no need is shown, or compliance would be unduly burdensome, or where

harm to the person from whom discovery is sought outweighs the need of the person seeking

discovery of the information." *Micro Motion*, 894 F.2d at 1323.

## III.   DISCUSSION

Plaintiffs contend that Tyco's responses to the First and Third Subpoenas are deficient.

They identify five specific categories where they argue that Tyco has failed to produce

responsive documents.  These categories are as follows:

(1)     Documents relating to the volume of Tyco's sales of products that
included IPtronics' VCSEL drivers that are accused of infringement of the '456
patent;

(2)     Documents relating to the presence of "negative peak portions" in the
electrical waveforms produced by the IPtronics' VCSEL drivers;

(3)     Documents relating to the importance to customers of the advantages
offered by a product that provides "negative peaking portions";

(4)     Documents that will help establish that there are no substantial
noninfringing uses of the IPtronics VCSEL drivers; and

(5)     Documents relating to the power consumption of Tyco products that
included IPtronics VCSEL drivers.

(Pls.' Mot. 3-11.)  In response to our inquiry of August 21, 2015, Plaintiffs represent that they

have withdrawn their Requests for documents falling within the fourth and fifth categories.[2]

---

[2] Plaintiffs' Requests for documents encompassed both the '456 Patent and the '447
Patent.  However, Tyco represented in its Response that, during the meet and confer process,
Plaintiffs represented that they were not concerned with receiving responsive documents as to
the '447 Patent.  (Tyco's Resp. 13; *see also* Decl. of Harold V. Johnson, Esquire ¶ 18, ECF No.
11-1.)  In our August 21, 2015 Letter to Plaintiffs, we inquired whether Plaintiffs had withdrawn
their Requests concerning the '447 Patent, based upon Tyco's representations.  In their August
26, 2015 Letter, Plaintiffs failed to respond to our inquiry or to Tyco's representations.  Based
upon their silence on this issue, we assume that Plaintiffs have withdrawn the Requests for
documents concerning the '447 Patent.

(Aug. 26, 2015 Ltr. from Pls. 1, 4.)  As to the three remaining categories, based upon the parties' arguments, we will refer to these categories as documents concerning sales, testing results, and marketing.

### A.     First Category of Documents:  Sales

The first category of documents concerns Tyco's domestic and foreign sales information of products that included the IPtronics drivers at issue.  Tyco represents that it has produced information for the products at issue showing domestic and foreign sales to Mellanox (a named Defendant here and parent company of IPtronics).  Tyco objects, however, to producing any information concerning its sales to any other customer.  It argues that these documents are irrelevant.

Plaintiffs contend that these documents are relevant on the issue of damages.  They argue that all Tyco products containing the IPtronics drivers at issue are relevant because the products all infringe on Plaintiffs' patents.  Further, Plaintiffs argue that the documents are relevant as to the world-wide commercial success of the "inventions claimed in those patents," and they are necessary to "rebut [Defendants'] contentions in the underlying litigation that those inventions were obvious."  (Aug. 26, 2015 Ltr. from Pls.' 4.)  In support of their relevancy arguments, Plaintiffs rely upon the following cases:  *Halo Elecs., Inc. v. Pulse Electronics, Inc.*, 900 F. Supp. 2d 1160 (D. Nev. 2012); *Honeywell Int'l, Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650 (E.D. Tex. 2009); and *3Com Corp. v. D-Link Sys., Inc.*, No. 03-2177, 2007 WL 949596 (N.D. Cal. Mar. 27, 2007).

Plaintiffs' arguments to the contrary notwithstanding *Halo Electronics*, *Honeywell International*, and *3Com Corporation* are easily distinguished from the instant case.  Each of these cases concern the relevancy of documents from a *party defendant*.  *Halo Elecs.*, 900 F.

Supp. 2d at 1167 (discussing relevancy in terms of a motion *in limine* to preclude the documents at trial); *Honeywell Int'l*, 655 F. Supp. 2d at 658-61 (discussing relevancy in terms of a motion to compel discovery); *3Com Corp.*, 2007 WL 949596, at *3-4 (same).  The cases fail to provide support for the obtaining of sales information documents from a non-party.  The arguments advanced by the plaintiffs in these cases, concerning the relevancy and need of the documents, are the same arguments advanced by Plaintiffs here:  the documents are relevant and necessary to support the claim of infringement and to provide a basis to calculate damages.  Based upon the cited cases, there is little doubt that Plaintiffs would be entitled to receive such documents from Defendants here.  However, there is nothing in these cases that supports the proposition that obtaining sales information from a non-party is appropriate to establish that a named defendant infringed on a plaintiff's patent, and to calculate damages based upon that defendant's infringement.

The Federal Circuit case of *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734 (Fed. Cir. 1987) is instructive.  In *American Standard*, the plaintiff in a patent infringement case sought discovery from a non-party concerning its sales information.  *Id*. at 741.  The Federal Circuit held that the discovery was irrelevant because the plaintiff had failed to show any nexus between the discovery sought and its required proofs at trial, and the plaintiff had failed to establish a need for the discovery, as it already possessed certain of the non-party's sales information.  *Id*. at 742-43; *see also id*. at 743 (noting that a party seeking a non-party's sales information "must nevertheless establish that it is reasonably necessary for a fair opportunity to develop and prepare the case for trial.").  Similarly, in the case of *Micro Motion*, a plaintiff sought discovery from a non-party concerning its sales information.  894 F.2d at 1325.  The Federal Circuit again held that the requested discovery was irrelevant, because the plaintiff put

forth no more than a mere assertion that the documents were somehow relevant to their damages.

*Id*. at 1326-27.  The court also noted the inherent problem in permitting this type of discovery

based upon nothing more than an assertion of relevancy:

> In particular, Micro Motion asserted entitlement to discovery of information concerning each competitor's business simply because it may seek to prove lost profit damages.  If this position were correct, a patentee could, in virtually every infringement suit, immediately obtain discovery from all possible competitors by merely filing a complaint asking for damages against one.  And, of course, the alleged infringer in such case would have the same right.  While we do not suggest that discovery is being used in this case simply to harass a competitor, the possibility for such abuse of discovery is readily apparent.

> In any event, Micro Motion's assertion of a claim for damages or even lost profit damages in itself does not provide a mantle of relevancy with respect to all of the information it sought from [the non-party], and the district court erred in essentially adopting that view.  The [district] court required no more of Micro Motion than a theoretical argument that the requested information somehow relates to its pending California action.

*Id*. at 1324-25 (internal quotation marks omitted).

With regard to Plaintiffs' request, there is no allegation that Tyco is infringing on their

patents.  Plaintiffs do not provide any indication as to how Tyco's sales information fits into the

calculus of their damages—damages that are based upon the alleged infringement by

Defendants.  And they do not establish why Tyco's sales information, beyond what has already

been produced, is necessary for Plaintiffs to prove their damages.  Certainly, a named

defendant's "worldwide profits and sales are relevant to a reasonable royalty calculation."  *3Com*

*Corp.*, 2007 WL 949596, at *4.  The named defendant is alleged to have infringed on a patent,

and alleged to have profited off that infringement.  That profit goes to the heart of a plaintiff's

calculation of damages.  The profits earned by a non-party, who is not alleged to have infringed

on a plaintiff's patent, has little relevance to this issue.

Tyco has already voluntarily produced documents reflecting sales associated with

Defendant Mellanox.  Requiring Tyco to produce additional documents is not warranted here.

Plaintiffs' Motion fails to establish the relevance of these documents.  And even if the documents

had some relevance to the underlying litigation, Plaintiffs have failed to justify the need for

them.  Under these circumstances, ordering Tyco to produce these documents would constitute

an undue burden.  Accordingly, Plaintiffs' Motion to compel, as to the first category of

documents, will be denied.

**B.      Second Category of Documents:  Testing Results**

Plaintiffs next seek documents pertaining to the physical and simulation testing of the

IPtronics drivers at issue.  Plaintiffs argue that these documents are relevant and necessary to

establish infringement.  They contend that these documents "will reflect both how IPtronics

performed its own simulations and what the results of those simulations were."  (Aug. 26, 2015

Ltr. from Pls. 3.)  Further, Plaintiffs represent that "despite repeated requests, IPtroncis has failed

to produce much of the electrical waveform testing performed by IPtronics itself and provided to

Tyco.  Avago contends that IPtronics failed to produce numerous documents relating to such

tests that it had sent to Tyco – documents that Tyco has produced."  (Pls.' Mot. 16.)

Notwithstanding their document request to Tyco, Plaintiffs do possess the Tyco product at issue

and intend to conduct their own physical and simulation testing on the Tyco product.  (Aug. 26,

2015 Ltr. from Pls. 3.)

Based upon Plaintiffs' own representations, it is difficult to understand why Tyco should

be burdened with producing these requested documents.  The documents largely concern testing

performed by IPtronics, and would certainly be in the possession of Defendants.  Plaintiffs have

sought these very documents from IPtronics.  To the extent that Defendants have failed to

provide them to Plaintiffs, that is a concern to be addressed by the court in California in the

underlying litigation.  It is not a concern for Tyco.  As a non-party, Tyco should not be forced to

shoulder the discovery obligations of Defendants.  Indeed, it appears that Plaintiffs' request to

Tyco will be moot once Defendants have produced all testing documents to Plaintiffs.  *See*

*Harris v. Wells*, Nos. 89-391, 89-482, 1990 WL 150445, at *4 (D. Conn. Sept. 5, 1990)

(observing that documents should first be sought from a party instead of a non-party, particularly

where the non-party is a customer of the party because "[c]onstant attempts to bring these

business associates into this litigation may well have negative effects on these business

relationships.").

As noted, a party seeking discovery from a third party is required to show the relevance

and need of the discovery sought.  *Micro Motion*, 894 F.2d at 1323.  "Need is enhanced when

information is uniquely available from the party from whom it is sought.  The corollary is that

need is diminished when the information is available elsewhere."  *American Standard*, 828 F.2d

at 743 (internal citations omitted); *see also id*. at 744 (holding that plaintiff failed to establish a

need for non-party's testing data).  By their own representations, Plaintiffs do not establish a

need here.  The documents sought from Tyco are the results of testing performed by IPtronics,

and can and should be obtained from IPtronics.  The responsibility of producing these documents

should be borne by the Defendants, not Tyco.  Moreover, Plaintiffs already possess an actual

device at issue, and can conduct their own physical and simulation testing.  Under these

circumstances, Plaintiffs have failed to establish how the information sought from Tyco is unique

when compared to the information that they will obtain from the Defendants and from their own

testing.[3]  There is no justification for burdening non-party Tyco with this document production.

---

[3] Aside from this document request, we note that Tyco represents, and Plaintiffs do not
dispute, that Tyco has already produced extensive documents in response to the Second and ITC
Subpoenas.  Plaintiffs have also deposed multiple Tyco witnesses with regard to the subpoenas

Accordingly, Plaintiffs' Motion to compel, as to the second category of documents, will be denied.

### C.        Third Category of Documents:  Marketing

Finally, Plaintiffs seek documents from Tyco reflecting the importance to customers of the advantages offered by a product that provides "negative peaking portions."  Plaintiffs make the argument that these documents, similar to the documents concerning the testing results, are relevant to their damages claims.  Plaintiffs cite to one of the 15 Relevant Factors, for calculating a reasonable royalty, set forth in the Model Patent Jury Instructions.

In *Georgia-Pacific Corporation v. U.S. Plywood Corporation*, 318 F. Supp. 1116 (S.D.N.Y. 1970), 15 factors were set forth as relevant "to the determination of the amount of a reasonable royalty for a patent license."  *Id*. at 1120.  The Federal Circuit later incorporated these "*Georgia-Pacific*" factors into the Model Patent Jury Instructions.  Fed. Cir. Model Patent Jury Instructions § 6.7 (2014 ed.).  Plaintiffs cite Relevant Factor 11, which concerns "[t]he extent to which the *infringer* has made use of the invention and any evidence probative of the value of that use."  *Id*. at Relevant Factor 11 (emphasis added).

The Factor relied upon by Plaintiffs relates to the alleged *infringer's* use of the patent.  It does not concern an individual who is not alleged to have infringed the patent.  There is no suggestion here that Tyco infringed on Plaintiffs' patents.  The documents requested from Tyco have limited relevance and do not justify the burden to Tyco.

Even if Tyco possessed documents relevant to Defendants' alleged infringement generally (something that Plaintiffs do not contend), the suggestion that documents reflecting the

---

and requested documents.  While neither Plaintiffs nor Tyco have provided specifics with regard to the documents produced and the testimony provided, it appears that Plaintiffs have had more than a fair opportunity to obtain discovery from Tyco.

advantages to *Tyco's* customers are somehow relevant to the question of Defendants' infringement is a reach.  Plaintiffs and Tyco are competitors.  (Tyco's Resp. 9.)  Documents reflecting what is important to Tyco's customers may well be relevant, and particularly advantageous, to Plaintiffs outside of this litigation.  However, they have little relevance to the issue of Defendants' alleged infringement being litigated here.  *See Micro Motion*, 894 F.2d at 1324-25; *Harris*, 1990 WL 150445, at *4.  Plaintiffs have failed to justify burdening Tyco with this document production.  Their Motion to compel, as to the third category of documents, will be denied.

## IV.     CONCLUSION

Non-party Tyco has already provided significant discovery to Plaintiffs.  Moreover, much of what Plaintiffs are seeking from Tyco can be obtained directly from Defendants or from Plaintiffs' own testing.  Under the circumstances, Plaintiffs Motion to Compel Tyco Electronics Corporation to Comply with Third Party Subpoena will be denied.

An appropriate Order follows.

**BY THE COURT:**


**/s/R. BARCLAY SURRICK**
**R. BARCLAY SURRICK, J.**